PITTMAN, Judge.
This appeal arises from a judgment entered by the Montgomery Circuit Court in an action filed in January 2011 by Gail Quinn and Patricia Hampton, former teacher-education students at Alabama State University (“ASU”), against two classes of defendants: (a) ASU, its trustees, and certain named and fictitiously named employees of ASU (collectively, “the ASU defendants”), and (b) the Alabama State Board of Education (“the Board”), the state education superintendent and deputy superintendent, and two employees of the Board (collectively, “the Board defendants”). The ASU defendants and the Board defendants filed separate motions to dismiss in which they asserted the doctrines of sovereign and state-agent immunity; the Board defendants further contended that various counts of the complaint did not state valid claims as a matter of law. After receiving briefs and arguments from the parties, the trial court entered an order on March 21, 2011, dismissing the Board defendants from the action, directing the entry of a final judgment as to the dismissal of the Board defendants (see Rule 54(b), Ala. R. Civ. P.), allowing the plaintiffs until April 4, 2011, to amend the complaint “[w]ith respect to the remaining [defendants” (ie., the ASU defendants), and setting a hearing on “the amended complaint” for April 14, 2011.
On April 4, 2011, the plaintiffs filed a postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., attacking the judgment dismissing the Board defendants. On April 5, 2011, the plaintiffs filed an amended complaint restating their claims against the ASU defendants, substituting certain named employees for fictitiously named parties, and purporting to again state claims against the Board defendants despite the trial court’s having entered a final judgment in favor of the Board defendants and despite not having leave to amend the complaint as to those defendants.[1] The Board defendants filed a response in opposition to the plaintiffs’ post-judgment motion in which, out of an abundance of caution, those defendants moved to strike the amended complaint; the plaintiffs filed a response stating that the Board defendants had been included in the amended complaint primarily in order to avoid a potential claim of appellate waiver of any error as to the March 21, 2011, judgment of dismissal. The ASU defendants also filed a motion to strike or dismiss, asserting that the amended complaint was untimely and that the claims against the ASU defendants were barred as a matter of law. A hearing was held on the plaintiffs’ and the defendants’ motions on May 81, 2011, at which, among other things, counsel for the plaintiffs contended that a certain document, which was not offered into evidence or exhibited to counsel for the defendants, constituted evidence supporting the plaintiffs’ claims against the Board defendants. The defendants moved to compel production of *414 that document, which the plaintiffs initially opposed but subsequently assented to after being orally directed to produce the document by the trial court in a subsequent hearing.
The plaintiffs’ postjudgment motion of April 4, 2011, which was directed to the March 21, 2011, judgment of dismissal as to the Board defendants, was not expressly ruled upon by the trial court within 90 days of April 4, 2011, and no express consent of all parties to the continued pen-dency of that motion appears in the record; that motion was thus automatically denied by operation of law on July 5, 2011 (see Rule 59.1, Ala. R. Civ. P.).[2] The trial court entered an order on July 13, 2011, that purported to again dismiss the claims against the Board defendants, dismissed the claims against the trustees of ASU, and dismissed all damages claims against any ASU defendant sued in his or her official capacity. At the request of the Board defendants, the trial court purported to again direct the entry of a final judgment as to the Board defendants on August 12, 2011.
On August 15, 2011, within 42 days of the denial of their postjudgment motion by operation of law, the plaintiffs filed a notice of appeal. That appeal was transferred to this court pursuant to Ala. Code 1975, § 12-2-7(6). The plaintiffs’ appellate briefs challenge not only the judgment of March 21, 2011, dismissing their claims against the Board defendants, but also the July 13, 2011, order that purported to again dismiss the claims against the Board defendants and that did dismiss several claims against the ASU defendants. However, because the trial court had directed the entry of a final judgment on March 21, 2011, as to the Board defendants, it lacked residual subject-matter jurisdiction thereafter to consider any amended complaint in the action as to those defendants. See Gulf Beach Hotel, Inc. v. Gulf State Park Auth., 58 So.3d 727, 731 (Ala.2010). Further, the trial court has yet to direct a final judgment as to its July 13, 2011, order as it applies to any of the ASU defendants, and a number of claims against ASU officers and employees remain pending in the trial court. We thus conclude that the July 13, 2011, order, to the extent that it is valid, is not properly before this court. See Rule 54(b), Ala. R. Civ. P. (an order adjudicating fewer than all the claims pending “is subject to revision at any time before the entry of judgment adjudicating all the claims”). Appellate consideration of the correctness of the trial court’s dismissal of various claims against certain of the ASU defendants must await the entry of a final judgment.
We thus have for review whether the trial court properly dismissed the claims against the Board defendants. “Under Rule 12(b)(6), Ala. R. Civ. P., a motion to dismiss is proper when it is clear that the plaintiff cannot prove any set of circumstances upon which relief can be granted.” Ex parte Haralson, 853 So.2d 928, 931 (Ala.2003). In making that determination, an appellate court is not to “ ‘ “consider whether the plaintiff[s] will ultimately prevail, but only whether [they] may possibly prevail.” ’ ” Id. (quoting Cook v. Lloyd Noland Found., Inc., 825 So.2d 83, 89 *415 (Ala.2001), quoting in turn Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993)). Further, all doubts regarding the sufficiency of the complaint are to be construed in favor of the plaintiffs. Ex parte Haralson, 853 So.2d at 931.
In their January 2011 complaint — the only complaint before the trial court at the time that its final judgment of dismissal was entered — the plaintiffs alleged the following pertinent facts. Both Quinn and Hampton were graduate students at ASU’s College of Education who received masters-level degrees, but they experienced difficulties in obtaining particular certifications from the Board. Specifically, Quinn was denied certification as an educational administrator beginning in 2001 after having completed the appropriate ASU course of study because she was not shown as having received any grade in a particular ASU class, “EDU 520,” that she had taken; although ASU officials were able to locate the appropriate grade record in 2009 and added the grade to Quinn’s academic transcript, the Board again declined to certify Quinn and noted that, under current state regulations, Quinn would need to take and pass the Praxis II educational examination and would also need to take and pass three additional academic courses. Hampton, for her part, enrolled at ASU in 2007 and was given transfer credit by ASU for three courses[3] she had completed that had been offered by the “University of Phoenix”; however, upon her completion of the ASU masters-degree program, her having filed for certification by the Board as a Glass A (ie., masters-level) teacher, and her having succeeded in passing the Praxis II examination, the Board declined to certify her, citing the three courses “transferred in” to ASU as a rationale, and Hampton was thereafter required to take (and did complete) three courses at ASU in order to obtain her certification thereafter.
The plaintiffs’ complaint contained seven counts, of which only four contained allegations directed to the Board defendants. The plaintiffs asserted (a) that the Board and its agents breached a legal duty “to oversee and ensure that the ASU defendants understood how to implement” state requirements regarding educator certification; (b) that the Board should be enjoined from violating its “present rules and duties” and should be directed to certify Quinn as an educational administrator based upon the criteria for certification at the time of her graduation in 2001; (c) that a writ of mandamus should issue to the Board defendants to compel issuance of a certification to Quinn; and (d) that the trial court should award monetary relief to the plaintiffs in the form of “due compensation for mental anguish, out of pocket expenses, past and future los[t] wages and retirement income, lost compensation due to loss of job[s], and suffering due to embarrassment, loss of prestige, status and morale,” as well as costs and attorney fees. Of the Board defendants, the members of the Board were sued only in their official capacities, while the state education superintendent, deputy superintendent, and the two employees of the Board named as defendants were sued in both their official and individual capacities.
To the extent that the complaint sought monetary relief against the Board defendants in their official capacities, the trial court’s judgment of dismissal is unquestionably correct under the doctrine of “state immunity.” Under Alabama law, “[a] suit against a State agency, or against State agents in their official capacities, is *416 a suit against the State” that is barred by Section 14 of the Alabama Constitution of 1901, and “State agents enjoy absolute immunity from suit in their official capacities”; accordingly, “[a] trial court must dismiss an action against ... a State agent acting in an official capacity at the earliest opportunity.” Burgoon v. Alabama State Dep’t of Human Res., 835 So.2d 131, 133 (Ala.2002). In contrast, “state-agent immunity” protects an agent of the state from civil liability in his or her individual capacity when the conduct made the basis of the claim against the agent is based upon the agent’s “discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner.” Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000).[4] Thus, the issue of individual-capacity damages liability presented in this appeal devolves to the question whether the Board defendants acted in furtherance of state statutes and regulations.
The Board defendants correctly note in their appellate brief that the Board is vested with the authority under Alabama law to “prescribe rules and regulations governing the training and the certification of teachers in the public schools of the state, and for the acceptance of the diplomas of the colleges and universities of Alabama” (Ala.Code 1975, § 16-3-16(a)); indeed, the legislature has gone so far as to state that “[a]U matters relating to the issuance, extension and renewal of [teaching] certificates based upon credentials, including transcripts of applicants’ records submitted by institutions of higher learning in Alabama approved for the training of teachers, ... [are] subject to the rules and regulations of the State Board of Education.” Ala.Code 1975, § 16-23-2 (emphasis added). The Board, exercising that authority, has adopted regulations that— with particular reference to Hampton’s allegations — provide that “[transferred courses and/or credits used to meet approved program requirements in professional studies, instructional support, or other approved program requirements ... must have been completed at a regionally accredited institution that prepares teachers on the same degree level of certification.” Ala. Admin. Code (Bd. of Educ.), r. 290-3-3-.02(2)(b) (effective September 7, 2009); accord Ala. Admin. Code (Bd. of Educ.), r. 290-3-3-.02(13) (repealed in 2009). The Board has also promulgated regulations that — with particular reference to Quinn’s allegations — provide that an applicant for initial certification in instructional leadership must (a) demonstrate “[satisfactory completion of a State-approved program with a minimum GPA of 3.0 in all courses in the Alabama State Board of Education approved program in instructional leadership” (emphasis added), and (b) “must meet the Praxis II requirements of the Alabama Prospective Teacher Testing Program” after 2007. Ala. Admin. Code (Bd. of Educ.), r. 290-3-3-.49(3)(b) and 290-3-3-.49(4).
The complaint alleges that when Hampton made contact with the Board’s certification specialist in May 2009, the specialist informed Hampton that her advisor and the certifying officer at ASU had “signed off on” transferred classes that were not approved by the Board. Taken together, however, § 16-23-2 and the pertinent Board regulation make clear the propriety of the Board’s conduct in barring the use of nonequivalent transfer credits for certification purposes notwithstanding the prerogative of ASU, acting separately, to accept them for degree-granting purposes. *417 A similar analysis applies to the individual-capacity claims as to Quinn, who alleges that she was denied certification between 2001 and 2007, before the Praxis II test requirement went into effect, because she had no reported grade in one of her courses taken at ASU; however, because the Board had validly adopted a regulation requiring an applicant to demonstrate a minimum GPA of 3.0 in all courses taken in pursuit of an instructional-leadership master’s degree, and adopted a further requirement that such an applicant pass the appropriate Praxis II exam that went into effect before Quinn could cause a report of her missing grade to be transmitted to the Board by ASU officials, the complaint alleges nothing more than that the Board defendants “discharg[ed] duties imposed on [them] by statute, rule, or regulation.” Ex parte Cranman, 792 So.2d at 405. We thus cannot conclude, as the plaintiffs would have us conclude, that the Board defendants are not entitled to state-agent immunity.
Our conclusions in this regard also foreclose the remaining nonmonetary forms of relief sought by the plaintiffs as to the Board defendants. To the extent that the plaintiffs have requested that the Board should be enjoined from violating its “present rules and duties” and should be made, via injunction or writ of mandamus, to certify Quinn as an educational administrator based upon the criteria for certification at the time of her graduation in 2001, the record does not reflect that, under the governing law, the Board has taken any unlawful action or that it has any duty to issue a certification to Quinn that would give rise to a right to such a certification. See State Dep’t of Indus. Relations v. Clegg Mfg. Co., 348 So.2d 249, 251-52 (Ala.Civ.App.1976) (injunction will not issue to restrain the legal actions of public officer); Ex parte Privett, 887 So.2d 854, 856 (Ala.2004) (denying petition for writ of mandamus because of absence of “clear legal right to the order sought”). Further, because the plaintiffs have not shown that the Board has any authority concerning the internal governance of ASU — an institution as to which the legislature has expressly divested the Board’s jurisdiction and that has been placed under the sole control of its board of trustees except as otherwise provided by law, see Ala.Code 1975, § 16-50-24 — the plaintiffs are not entitled to any relief, as a matter of Alabama law, on their claim that the Board has somehow failed to carry out a hypothetical duty to undertake oversight of educator-certification masters-degree programs at ASU.
The plaintiffs’ remaining contention is that the trial court erred in compelling them, during postjudgment proceedings, to produce, over their objection, a particular document that might have had some bearing on Quinn’s claims. As we have noted, the trial court did not expressly rule upon the plaintiffs’ postjudgment motion, and the record does not indicate that the trial court considered the document in entering its March 21, 2011, judgment of dismissal or in electing to allow the postjudgment motion to be denied by operation of law. Further, as we have noted herein, the trial court’s March 21, 2011, judgment of dismissal for failure to state a claim was correctly entered. Therefore, we conclude that if the trial court indeed erred in compelling production of that document, any such error necessarily did not “probably injuriously affect[ ] substantial rights of the” plaintiffs so as to permit reversal on that ground. See Rule 45, Ala. RApp. P.
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. Rule 78, Ala. R. Civ. P., provides that, "[u]n-less the court orders otherwise, an order granting a motion to dismiss shall be deemed to permit an automatic right of amendment of the pleading to which the motion is directed within ten (10) days from service of the order." Because the plaintiffs' amended complaint was filed on April 5, 2011, 11 working days after the March 21, 2011, judgment of dismissal as to the Board defendants, it was untimely under that rule, and we need not decide whether the trial court’s grant of leave to the plaintiffs to amend their complaint only as to the ASU defendants represents an example of a trial court's "ordering] otherwise” so as to abrogate any automatic right of amendment inuring to a pleader under Rule 78.

. Rule 59.1 provides that a postjudgment motion that is not ruled on by the court within 90 days is deemed denied at the expiration of the 90-day period. The 90th day following the plaintiffs' filing of their postjudgment motion on April 4, 2011, was Sunday, July 3, 2011, and Monday, July 4, 2011, was a state holiday. Therefore, the plaintiffs’ post-judgment motion was denied on Tuesday, July 5, 2011. See First Alabama Bank v. McGowan, 758 So.2d 1116 (Ala.Civ.App.2000), and Richburg v. Cromwell, 428 So.2d 621 (Ala.1983).

. The Board defendants have labeled those courses as "continuing-education" courses, although the record, apart from the Board defendants’ own contentions in trial-court filings, does not substantiate that characterization.

. Although Cranman was a plurality opinion, its rationale was subsequently applied by the majority in Ex parte Butts, 775 So.2d 173 (Ala.2000).